IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 7 |
| JAY FREESE, ) | |
| ) | |
|    Debtor. ) | Bankruptcy No. 09-02627 |
| ------------------------------------------------- | |
| LINCOLN SAVINGS BANK, ) | |
| ) | Adversary No. 09-09140 |
|    Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | |
| JAY FREESE, ) | |
| ) | |
|    Defendant. ) | |

**ORDER RE: COMPLAINT OBJECTING TO DISCHARGE**

    This matter was tried pursuant to assignment on May 24, 2011. Plaintiff Lincoln Savings Bank was represented by attorney Patrick G. Vickers. Debtor/Defendant Jay Freese was represented by attorney Jerrold Wanek. After the presentation of evidence and argument, the Court took the matter under advisement. The time for filing briefs has passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(J).

**STATEMENT OF THE CASE**

    Lincoln Savings Bank seeks denial of discharge under 11 U.S.C. § 727 on three grounds. It asserts Debtor failed to disclose all income and assets in the Statement of Financial Affairs and Schedules. Second, the Bank alleges Debtor failed to keep records of his financial information and business transactions. Third, it claims Debtor failed to satisfactorily explain the loss of assets. Debtor denies all allegations and affirmatively states he properly listed his property in the Schedules and Statements. He alleges he had net losses from his farm operation in 2007 and 2008 and did not try to hide assets from creditors or the trustee.

## FINDINGS OF FACT

Debtor filed his Chapter 7 bankruptcy petition on September 10, 2009 with all schedules and statements. He has not filed amended schedules or statements. Trustee found no assets available in the bankruptcy estate for distribution to creditors and filed a report of no distribution on December 10, 2009. Debtor's Schedule F shows one unsecured creditor with a claim of $20,000. Schedule D lists two secured creditors. Citizens Bank holds a security interest in a 5th wheel camper with total debt of $28,000, of which $9,000 is unsecured. The only other debt listed in Debtor's schedules is owed to Plaintiff, Lincoln Savings Bank, in the total amount of $430,000, of which $354,466.46 is unsecured. Schedule D lists the property subject to the Bank's lien as: "Checks from Tyson Foods representing proceeds of livestock," valued at $75,533.54.

According to the Joint Pre-Trial Statement, the admitted and uncontested facts are: "During the two years and nine months prior to the debtor's filing of bankruptcy he engaged in a sole proprietorship under which he purchased and sold hogs. The Debtor read the Schedules and Statement of Financial Affairs filed in this case and signed them under penalty of perjury."

The Bank asserts Debtor provided false answers on the Statement of Financial Affairs at questions 1 and 18. Question 1 requests disclosure of "the gross amount of income the debtor has received from employment, trade, or profession, or from operation of the debtor's business . . . either as an employee or in independent trade or business." Debtor's answer includes only his wages from USS Polaris. Nothing is included regarding any income he received from his hog business. Question 18 requests information regarding a debtor's business during the six years prepetition. For this question, Debtor checked the box for "None."

Debtor's 2007 U.S. Form 1040 tax return, Plaintiff's Exhibit 2, shows gross farm income of $491,637 and total expenses of $592,358, with a net farm loss of -$100,721 for the year. Debtor discloses in the Pre-trial Statement that in 2008 he had gross farm income of $800,103 and total expenses of $917,756, with a net farm loss of -$117,653 for the year. In the Form 1040, Debtor lists his occupation as "livestock manager."

2

Debtor testified that he did not disclose income from his hog business on the Statement of Financial Affairs because he didn't consider that it made income for him in light of the expenses. He stated that his understanding of gross income was that you make money. Since he did not make money on the hogs, he had no income to report. Debtor believed he was not required to disclose the amount of money he received in his hog business because he "just went by income" and "income minus expenses is gross." When asked about his income from USS Polaris, Debtor recognized that gross income was total income and net income was the actual amount he got paid.

At trial, Debtor agreed that his hog business had $2 million in sales and he was in business since 2002. When asked why he didn't list the hog business or farming in question 18 of the Statement of Financial Affairs, Debtor stated his business is at USS Polaris, his employer, but "this was like hobby farming." He stated he had no land and rented all of his buildings. Debtor also acknowledged other discrepancies between the Statement of Financial Affairs Debtor filed and his tax return. His bankruptcy schedules and statements do not disclose a payment of $21,014 received from First Choice Livestock LLC. Debtor testified that this was a refund of funds he had prepaid for medicine and additive for pigs. He had been a member of the LLC but that ceased prior to 2007. Schedule F of Debtor's 2007 Form 1040 shows income of $4,050 Debtor received from Unique Swine System Inc. which also was not disclosed in Debtor's bankruptcy schedules and statements.

The Bank asserts Debtor either did not disclose assets or fraudulently transferred them prepetition, including: a Bobcat S175, Polaris Ranger ATV, Polaris 700 ATV, Kubota tractor/loader and a 2003 Ford Explorer. Schedule B does not reflect these items and question 10 of the Statement of Financial Affairs, requesting information about property transferred within two years prepetition, is checked "None." In contrast, Plaintiff's Exhibit 5, a balance sheet by Debtor dated 11/24/2008, includes these items as assets with a value of $7,000 for the 2003 Ford Explorer and a total value of $28,000 for the other four items which are listed as Machinery & Equipment. Plaintiff's Exhibit 7 is a Commercial Security Agreement dated 07-19-2007 in which Debtor grants the Bank a security interest in many categories of property, including: "Equipment: All equipment including, but not limited to, machinery, vehicles, furniture, fixtures, manufacturing equipment, farm machinery and equipment, shop equipment, office and record keeping equipment, parts, and tools."

3

Debtor testified that he sold the bobcat for $10,000 and the tractor/loader for $1,000 in 2009 and deposited the proceeds in his retirement account. He traded the Polaris ATV and Ranger with his employer, USS Polaris, in exchange for a corn stove to heat his house. He agreed that he had used all of these items in his hog business. When asked whether he understood the Commercial Security Agreement granted the Bank a lien on these items, Debtor answered: "No." He stated he got the loan but the Bank didn't take any collateral. Despite selling and trading the items within two years prepetition, he believes his answer to question 10 of the Statement of Financial Affairs, that there were no transfers, is truthful.

Plaintiff's Exhibit 8 is a copy of the title for the 2003 Ford Explorer as of August 4, 2009. Both Debtor and his wife, Cynthia Freese, are listed as owners. No lien is noted on the title. Debtor testified that he did not include this in his bankruptcy schedules because it's his wife's vehicle. He acknowledged that he had an ownership interest in the vehicle, along with his wife, based on the title. Debtor reiterated, however, that he did not include it as his personal property on bankruptcy schedules because "it's my wife's, not mine."

Debtor testified that it was a challenge for him to fill out the bankruptcy schedules and statements. He claims he read way too much into the questions and made it harder than it actually was, but he did the best he could. Debtor didn't think the trade of the ATVs for the heater was an unusual transaction which would need to be reported. He disclosed the sales of the tractor and bobcat to the Chapter 7 Trustee at the meeting of creditors. He turned over all the paperwork the Trustee requested and did not attempt to hide his farming operations. Debtor believed Question 1 of the Statement of Financial Affairs was requesting income, not gross revenue. He notes that Question 18 asks for information about a business, but does not mention any type of farm. He asserts his tax returns are very transparent about the farm operation. He also points out that Trustee did not ask for more specificity in the bankruptcy schedules and statements and in his opinion he filled them out appropriately.

Debtor testified that he did not use an outside bookkeeper. He was in possession of his books and records. He had sheets keeping track of pigs, medicine, rent and other expenses for each building. He transferred that information to a computer and gave a copy to the lady who prepares his tax returns. Debtor noted that the Statement of Financial Affairs did not request disclosure of his tax preparer and he kept possession of his own books and records and merely gave her a copy.

## CONCLUSIONS OF LAW

The Bank asserts discharge should be denied under several subsections of § 727(a), which states, in pertinent part:

(a) The court shall grant the debtor a discharge, unless—

. . .

    (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--

        (A) property of the debtor, within one year before the date of the filing of the petition; or

. . .

    (3) the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case;

    (4) the debtor knowingly and fraudulently, in or in connection with the case--

        (A) made a false oath or account;

. . .

    (5) the debtor has failed to explain satisfactorily, before determination of denial of discharge under this paragraph, any loss of assets or deficiency of assets to meet the debtor's liabilities;

11 U.S.C. § 727.

"Because denial of discharge is a 'harsh and drastic penalty,' § 727 is 'strictly construed in favor of the debtor,' though its purpose remains to prevent abuse of the bankruptcy process."  In re Smith, 373 B.R. 895, 900 (Bankr. N.D. Iowa 2007) (quoting In re Korte, 262 B.R. 464, 471 (B.A.P. 8th Cir. 2001)).

At the close of evidence, Debtor moved to dismiss the Bank's claims arguing that there was no evidence Debtor intended to defraud the Bank or other creditors. He asserts there is zero evidence in the record to support a prima facie case under subsections (a)(3) or (5) of § 727.  Based on the record presented, the Court will focus on § 727(a)(4)(A).

## FALSE OATH

To establish that Debtor made a false oath under § 727(a)(4)(A), the Bank must prove by a preponderance of the evidence that: "(1) Debtor made a statement under oath; (2) the statement was false; (3) Debtor knew the statement was false; (4) Debtor made the statement with fraudulent intent; and (5) the statement related materially to Debtor's bankruptcy case."  In re Juehring, 332 B.R. 587, 591 (Bankr. N.D. Iowa 2005) (denying the discharge of one joint debtor).   After a plaintiff introduces evidence that the debtor committed prohibited acts under subsection (a)(4)(A), the debtor has the burden of coming forward with evidence to explain his or her conduct.  In re Richmond, 430 B.R. 846, 874 (Bankr. E.D. Ark. 2010).

Statements made by a debtor in the bankruptcy petition, schedules and statements, and during the meeting of creditors, are made under oath.  In re Rohde, 400 B.R. 230, 235 (Bankr. N.D. Iowa 2009).   The question of a debtor's knowledge and intent under § 727(a)(4) is an issue of fact.  In re Sears, 246 B.R. 341, 347 (B.A.P. 8th Cir. 2000) (citing In re Olson, 916 F.2d 481, 484 (8th Cir. 1990)). "Intent under § 727 can be established by circumstantial evidence.   Statements made with reckless indifference to the truth are regarded as intentionally false."  In re Bauder, 333 B.R. 828, 830 (B.A.P. 8th Cir. 2005).   As a debtor is unlikely to admit to fraudulent intent, the debtor's course of conduct and other surrounding circumstances may be considered.  In re Gehl, 325 B.R. 269, 277 (Bankr. N.D. Iowa 2005).

One factor relevant to fraudulent intent is the debtor's business acumen.   For example, in In re Alber, 361 B.R. 499, 503 (Bankr. N.D. Iowa 2007), the court found the evidence suggested that the debtor was an extremely unsophisticated

6

businessman and concluded that he did not knowingly omit information from his schedules. In In re Bauder, 333 B.R. 828, 831 (B.A.P. 8th Cir. 2005), the court recognized the debtor's limited education, and affliction with attention deficit disorder, and found her explanations for omissions in her schedules plausible. In In re Mosher, 417 B.R. 722, 783 (Bankr. N.D. Ill. 2009), the court noted the debtor was a sophisticated businessman in denying his discharge.

Another issue courts consider is whether the debtors file amended schedules once an omission comes to light. In Mertz v. Rott, 955 F.2d 596, 598 (8th Cir.1992), the Eighth Circuit stated that once the debtor became entitled to and received an omitted state tax refund, "he was required to file a supplemental schedule listing that asset" and, if appropriate, claim it exempt. In an unpublished case Debtor relies on in his brief, In re Rudolph, 233 F. App'x 885, 889-90 (11th Cir. 2007), the court found the debtor credible, in part because he had provided explanations and amended his petition several times to remedy most of the omissions. In Bauder, the Court found the debtor's prompt disclosure of an asset on amended schedules to be evidence of her innocent intent. 333 B.R. at 832. Amending schedules, however, does not necessarily exonerate a debtor who knowingly fails to voluntarily, unequivocally and completely disclose all property interests in the bankruptcy case. See In re Bieniek, 417 B.R. 133, 139 (Bankr. D. Minn. 2009).

The omission of a relatively modest, or even exempt asset, is material if the omission was fraudulent and knowing. Mertz, 955 F.2d at 598. "The subject matter of a false oath is 'material,' and thus sufficient to bar discharge, if it bears a relationship to the [debtor's] business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of [] property." Id. (citation omitted). Debtors have an uncompromising duty to disclose whatever ownership interests they hold in property. In re Tripp, 244 B.R. 95, 98 (Bankr. N.D. Iowa 1998). "It is not for the debtor to pick and choose or to obfuscate the answers." Id. The omission of an asset with no value to creditors will be deemed material if it relates to the bankruptcy estate. In re Smith, 373 B.R. 895, 902 (Bankr. N.D. Iowa 2007).

In In re Grimlie, 439 B.R. 710, 717 (B.A.P. 8th Cir. 2010), the court denied discharge where the debtor failed to list his interest in a business and hid its existence by claiming he was doing business under another entity during the relevant time period. The court in In re Richmond, 429 B.R. 263, 308 (Bankr. E.D. Ark.

7

2010), denied discharge where the debtor's schedules and a prepetition Balance Sheet were irreconcilable. In In re Huff, 349 B.R. 587, 593-94 (Bankr. S.D. Iowa 2006), the court denied discharge where the debtor's omissions all involved her farming operation.

The court in In re Mosher, 417 B.R. 772, 782 (Bankr. N.D. Ill. 2009), found the debtor lied about income he earned as a consultant in his bankruptcy schedules and statements. It stated: "While [the debtor] complains that he lost more money to IST than he ever got back, this is irrelevant. The schedules ask for gross income, not net income." Id. The debtor also claimed that he did not intend to make misstatements and omissions but was simply confused by the Bankruptcy Code. The court stated: "[D]ebtors have a duty to accurately and completely disclose information about their property interests. If [the debtor] had doubt about his ability to comply with the Bankruptcy Code, he should have obtained counsel or sought other assistance." The court also noted that the debtor was a sophisticated businessman with more business experience than the average layperson. Id. "Moreover, the Debtor seems to have used every opportunity of 'doubt' to choose to not disclose assets, when he should have erred in favor of disclosing." Id. The court ultimately concluded the debtor should be denied a discharge under § 727(a)(4)(A). Id. at 784.

## ANALYSIS

The Bank has proven by a preponderance of the evidence that Debtor made false statements under oath. Debtor did not disclose the existence and gross income of his livestock business in his schedules and statements. He also failed to list more than $25,000 in income which is revealed in Debtor's 2007 Form 1040. Debtor did not disclose transfers of two ATVs, a bobcat and a tractor, or his co-ownership of his wife's Ford Explorer.

With these omissions clearly established, Debtor has the burden to explain his conduct. Debtor's explanation, reduced to its essence, is that he was unsure what to disclose on his schedules and statements, and, as none of the omitted property interests would benefit creditors, he elected to omit them. He testified that he fully disclosed everything to Trustee at the meeting of creditors and did not intend to defraud anyone.

Under existing law, the omissions are material. Even if discovery of the property interests results in no recovery for the bankruptcy estate, the subject matter relates to Debtor's assets and business dealings. The definitive issues here are whether Debtor knew his statements were false and whether he made the statements with fraudulent intent.

Debtor's explanations for his omissions are not compelling in establishing innocent intent. Mr. Freese is not unsophisticated in the business world. He has worked as a salesman in various businesses and in a livestock operation prior to operating his own. His assertion that his lack of revenue from his livestock business excuses his failure to disclose gross income is neither credible nor is it a correct statement of the law. He acknowledges that he understood what gross income meant on his paycheck from Polaris. Debtor splits hairs in explaining his failure to completely disclose all of his property interests. For example, he testified that he had no revenue from his business, so he didn't list gross income. He stated he considered his operation a "hobby farm," rather than a business; or alternatively, a farming business rather than a business. He testified he excluded his co-ownership of his wife's car, because it wasn't his car.

The explanation Debtor offers for failing to disclose the transfers of two ATVs, a bobcat and tractor is incomprehensible. He stated he didn't disclose the transfers because he had made these types of transfers before. This is not an exception to the disclosure requirement. Debtor also unequivocally stated that these items were not pledged as collateral to the Bank, even though the clear language of the security agreement includes this type of equipment.

Like the debtor in Mosher, Debtor uses protestations of doubt to not disclose his assets when the law requires debtors to err in favor of full disclosure. Since the discovery of the omissions, Debtor has never filed or sworn to amended schedules to fully disclose his assets and business. He continues to assert that his original schedules were accurate, even in the face of the Bank's long list of deficiencies.

This Court must ultimately conclude that the Bank has met its burden to prove the elements for denial of discharge under § 727(a)(4)(A). Debtor knowingly made false statements under oath regarding his business dealings and transactions with fraudulent intent. Debtor's various explanations regarding his failure to disclose are not convincing. The circumstances as a whole display Debtor's intent to hide his business dealings from Trustee, his creditors, and the Court. Debtor is not

9

unsophisticated. His answers to the questions in the Statement of Financial Affairs, include intentional omissions. As the Bank pointed out in court, Debtor has never filed a properly completed Statement of Financial Affairs or Schedules.

In light of this conclusion, the Court will not address the Bank's other claims under § 727(a)(2), (3) and (5) at length. Subsection (a)(2) may be applicable as the Court found Debtor transferred property within one year prepetition. Trustee, however, has not recovered any property for the estate based on these transfers. There is little evidence, if any, that Debtor concealed books or documents under subsection (a)(3). Debtor has provided some explanation of his failure to disclose as required by § 727(a)(5). Based on the established facts of this case, § 727(a)(4)(A) is the most applicable and is the section under which the Court finds Debtor should be denied a discharge.

**WHEREFORE**, the Complaint Objecting to Discharge, as amended, is GRANTED.

**FURTHER**, discharge is denied under § 727(a)(4)(A) based on Debtor's knowing and fraudulent false oaths in Schedules and the Statement of Financial Affairs.

**FURTHER**, judgment shall enter accordingly.

Dated and Entered: June 30, 3011

PAUL J. KILBURG
U.S. BANKRUPTCY JUDGE

10